UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DERRICK LEE SMITH,

                Plaintiff,

v.

JAMES SCHIEBNER, et al.,

                Defendants.

_____/

Case No. 1:21-cv-878

Hon. Hala Y. Jarbou

**OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this suit in the United States District Court for the Eastern District of Michigan; that court transferred the matter to this Court for further proceedings on October 12, 2021.  (ECF No. 4.)  Plaintiff paid the full filing fee to the Eastern District of Michigan before the case was transferred.

       Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.  The Court will also deny Plaintiff's request for class certification (ECF No. 1), request to honor the Eastern

District of Michigan's referral to the early mediation program (ECF No. 15) and his various pending motions seeking to unseal a document (ECF No. 8) and challenging the judicial assignments (ECF Nos. 12, 13, 14).

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues MDOC Director Heidi Washington, MCF Warden James Schiebner, and Resident Unit Manager (RUM) April McLaughlin.[1]

Plaintiff asserts that he is suing on behalf of all 37,000 MDOC prisoners who are "similarly situated."  (ECF No. 1, PageID.2.)  Plaintiff is the Warden's Forum Representative for Unit 5 at MCF.  (*Id.*)  He meets with the RUM and Warden each month "for presentation and exhaustion of all remedies and all issues for the [p]opulation."  (*Id.*)

On June 16, 2021, and July 27, 2021, Plaintiff made Defendants aware of an ongoing situation where "the entire prison population has been placed in the position of not being able to utilize the prison phones upstairs in the upper wings of each unit even though the phones are there for 'the use of prisoners in the housing units.'"  (*Id.*, PageID.3.)  Plaintiff avers that there are a limited number of phones in each housing unit, and, generally, inmates "have to wait for the phones to open and the only way to do that is to stand in the area where they can see the phones are open and to be used."  (*Id.*)  Plaintiff alleges that these phone restrictions "placed unnecessary

---

[1] Plaintiff uses "MacLaughlin" in the caption of his complaint but references "McLaughlin" throughout.  The Court, therefore, adopts "McLaughlin" for the correct spelling of this Defendant's last name.

hardship and burdens" upon him and other prisoners, resulting in them not being able to freely utilize the phones.  (*Id.*)

Plaintiff further asserts that Defendant McLaughlin has an office on Unit 5 on the upper level "literally less [than] 3 feet from the phones."  (*Id.*, PageID.4.)  According to Plaintiff, Defendant McLaughlin decided "that she does not want any prisoners waiting for the phone in the waiting area."  (*Id.*)  When asked why, she responded that "it is in the rule book that prisoners must wait in the day rooms for the phones[,] and they cannot loiter."  (*Id.*)  Plaintiff replied that there were no day rooms upstairs for prisoners.  (*Id.*)  Plaintiff avers that Defendant McLaughlin has forced him and other prisoners to wait in a day room "downstairs for a phone that they cannot see is open upstairs."  (*Id.*)  He claims that, as such, "they cannot use the phones which they have a right to use."  (*Id.*)

Plaintiff claims that Defendant Schiebner is "responsible for the day-to-day functions of the prison and ensuring [that] there are no violations of . . . constitutional rights."  (*Id.*)  Plaintiff told Defendant Schiebner that Defendant McLaughlin was abusing her authority as RUM and asked if chairs could be placed "for the population to wait in the areas for the phone."  (*Id.*)  According to Plaintiff, Defendant Schiebner "simply answered in one word 'no.'"  (*Id.*)

Plaintiff avers that Defendant McLaughlin created this issue because "she is a woman who simply does not want male prisoners around her."  (*Id.*)  According to Plaintiff, Defendants have "chosen to force prisoners to wait in an area that is not visible" and can result in a prisoner being threatened with receiving "a misconduct ticket that can result in a loss of privileges or an increase in custody and security level."  (*Id.*)  Plaintiff claims that the "very rules that have been in place for years and . . . have been working are all of a sudden changed by Defendant McLaughlin."  (*Id.*)

Plaintiff avers that Defendants McLaughlin and Schiebner have "taken it upon themselves to frame and set up the [inmates] for misconducts" by not allowing them to wait for the phones.  (*Id.*, PageID.5.)  He believes that the only purpose for which Defendants have imposed this new rule is that they wish to frame inmates to convict them of misconduct charges that will "result in a severe deprivation and loss of a right that is protected by the First and Fourteenth Amendments."  (*Id.*)  Plaintiff also claims that this new system amounts to cruel and unusual punishment because it is "such a horrific type of governing and administration and management of prisoners."  (*Id.*)  Plaintiff suggests that the Defendants "have failed to even honor the rights of those prisoners to use the prison phones upstairs to make legal phone calls or make other emergency phone calls."  (*Id.*, PageID.7.)

Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights.  (*Id.*)  Plaintiff seeks declaratory and injunctive relief.  (*Id.*, PageID.8.)  He also seeks $60,000.00 in damages.  (ECF No. 16, PageID.51.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

4

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.   First Amendment Claims

### 1.   Right to Communication

Plaintiff suggests that Defendants have violated his First Amendment "rights to communication."  (ECF No. 1, PageID.7.)  The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817,

5

822 (1974).  Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's]

incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999) (en banc).

Prisoners do have a right to "reasonable" access to the telephone. *See Washington

v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994).  However, the restrictions about which Plaintiff

complains did not completely deprive him of access with the outside world. *Cf. Almahdi v.

Ashcroft*, 310 F. App'x 519 (3d Cir. 2009) (holding that restriction of prisoner's telephone access

to one phone call per month did not violate the First Amendment); *Miles v. Scanlon*, No. 1:21-cv-

74, 2021 WL 1809834, at *5 (W.D. Mich. May 6, 2021) (noting that inmates "do not have a

constitutional right to a particular form of communication"); *Dallas v. Chippewa Corr. Facility*,

No. 2:17-cv-198, 2018 WL 3829203, at *6 (W.D. Mich. Aug. 13, 2018) (dismissing prisoner's

First Amendment claim premised upon a "refusal to allow him to use a phone every thirty days

while on a break from sanctions").  Plaintiff's complaint fails to plausibly allege a violation of his

First Amendment right to free speech.  At no time does he allege that he was completely cut off

from communication with the outside world.  Rather, Plaintiff merely takes issue with limitations

placed upon use of the telephones in the housing units.  Plaintiff's First Amendment free

speech/communication claim will, therefore, be dismissed.

### 2.    Retaliation

Plaintiff vaguely suggests that Defendants have implemented the new policy

regarding telephone use to retaliate against inmates.  (ECF No. 1, PageID.6–7.)  Retaliation based

upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See

Thaddeus-X*, 175 F.3d at 394.  In order to set forth a First Amendment retaliation claim, a plaintiff

must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was

taken against him that would deter a person of ordinary firmness from engaging in that conduct;

and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*  Moreover,

a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to suggest that Defendants retaliated against him for engaging in protected activity. Indeed, Plaintiff's complaint is devoid of any facts regarding protected activity. Moreover, Plaintiff's conclusory allegations that Defendants are attempting to frame him and other inmates for using the phones by issuing misconduct tickets simply fails to set forth a plausible retaliation claim. At no point does Plaintiff allege that he has attempted to use the phones or grieved the new policy and received a misconduct ticket in response. Plaintiff's speculative

7

allegations clearly fail to state a plausible claim for relief.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiff's retaliation claims against Defendants will, therefore, be dismissed.

### 3.       Access to the Courts

Plaintiff also suggests that Defendants have violated his First Amendment right to "access to courts through lawyers and legal professionals and other legal entities."  (ECF No. 1, PageID.7.)  According to Plaintiff, the policy regarding telephone use prohibits inmates from "us[ing] the phones upstairs and mak[ing] legal calls."  (*Id.*, PageID.8.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824-28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).  In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to nonfrivolous pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as

much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

There are simply no facts in Plaintiff's complaint to support an inference that his right to access the courts was violated.  Plaintiff does not allege that he himself was prohibited from pursuing a direct appeal of his criminal convictions, a habeas corpus application, or a civil rights claim because of the limitations placed upon phone use.  Moreover, nothing in the complaint suggests that Defendants impeded upon Plaintiff's general interest in protecting the attorney-client privilege.[2]  Plaintiff's access to the courts claims will, therefore, be dismissed.  *See Dallas*, 2018 WL 3829203, at *6 (noting that prisoner failed to allege that his restricted phone access hampered his access to the courts or that "he was prejudiced in any ongoing legal proceedings").

### B.    Eighth Amendment Claims

Plaintiff also suggests that Defendants have violated his Eighth Amendment rights through implementation of the new policy regarding phone usage.  (ECF No. 1, PageID.8.) According to Plaintiff, it is "cruel and unusual punishment to bring such a horrific type of governing and administration and management of prisoners" into play.  (*Id.*, PageID.5.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the

---

[2] To the extent Plaintiff asserts that his Sixth Amendment right to counsel was violated, that right applies only to criminal prosecutions, and Plaintiff's complaint is devoid of any facts suggesting that the Sixth Amendment would apply.  *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relations in the criminal setting . . . .").

"unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Limitations on telephone privileges, while unpleasant, do not amount to a denial of basic human needs. *See Webb v. Bucholtz*, No. 1:20-cv-1036, 2021 WL 804721, at *5 (W.D. Mich. Mar. 3, 2021) (collecting cases). Plaintiff's allegations fall well short of meeting the objective prong of the Eighth Amendment standard. His Eighth Amendment claims against Defendants will, therefore, be dismissed.

### C.    Fourteenth Amendment Claims

Plaintiff also asserts that Defendants' actions violated his Fourteenth Amendment due process rights by infringing upon his privilege and right to use the phones. (ECF No. 1, PageID.6.) "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis (Bazzetta II)*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there

exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *K'y Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted), *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin*, the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the Court, a prisoner is entitled to the protections of due process only when the change in conditions "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff vaguely suggests that Defendants' action violate MDOC policy regarding phone usage and access to the courts. Courts, however, routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992). Moreover, Plaintiff's claim that his Fourteenth Amendment rights were violated because he could not access the phones as freely as he would like lacks merit. *See, e.g.*, *Dallas*, 2018 WL 3829203, at *6; *Anderson v. Barrows*, No. 2:19-cv-3631, 2019 WL 4451536, at *2 (S.D. Ohio Sept. 17, 2019) (dismissing plaintiff's due process claim premised upon "his inability to access a phone to call his family"); *Allen v. Alexsander*, No. 2:16-cv-245, 2017 WL

2952929, at *5 (W.D. Mich. July 11, 2017) (90-day phone restriction did not implicate a liberty

interest); *Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19,

2006) (6-month restriction on telephone privileges does not amount to an atypical or significant

hardship that would trigger due process protections); *Adorno v. Semple*, No. 3:16-cv-325, 2016

WL 7469709, at *7 (D. Conn. Dec. 28, 2016) (concluding that "any Fourteenth Amendment claim

based on an inability to make a telephone call is without merit").  Plaintiff's inability to use the

phones as often as he would like simply does not reach the level of an atypical and significant

hardship sufficient to trigger his due process rights.  His Fourteenth Amendment claims will,

therefore, be dismissed.

## III.    Pending Motions and Requests

### A.    Class Certification

Plaintiff purports to bring the same constitutional claims on behalf of all 37,000

MDOC prisoners who are similarly situated.    (ECF No. 1, PageID.14.)    Because the

appropriateness of class action status must be determined by the Court under Rule 23 of the Federal

Rules of Civil Procedure, the Court construes Plaintiff's statement as a request for class

certification.  For a case to proceed as a class action, the Court must be satisfied on a number of

grounds, including the adequacy of class representation.  *See* Fed. R. Civ. P. 23(a)(4). Plaintiff

bears the burden of establishing the right to class certification.  *See In re Am. Med. Sys.*, 75 F.3d

1069, 1086 (6th Cir. 1996).

It is well established that *pro se* litigants are "inadequate class representatives."  *See*

*Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Ziegler v.*

*Michigan,* 59 F. App'x. 622, 624 (6th Cir. 2003) (recognizing that [g]enerally pro se prisoners

cannot adequately represent a class) (citing *Fymbo v. State Farm & Cas. Co.*, 213 F.3d 1320, 1321

(10th Cir. 2000)); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (recognizing that

12

"[*p*]*ro se* prisoners generally may not bring class action lawsuits concerning prison conditions")

(citing *Dean v. Blanchard*, 865 F.2d 257 (6th Cir. 1988) (table)), and *Oxendine v. Williams*, 509

F.2d 1405, 1407 (4th Cir. 1975)); *Palasty v. Hawk,* 15 F. App'x. 197, 200 (6th Cir. 2001)

(concluding that "pro se prisoners are not able to represent fairly [a] class" (citing *Fymbo*, 213

F.3d at 1321, and *Oxendine,* 509 F.2d at 1407); *Marr v. Michigan,* No. 95-1794, 1996 WL 205582,

at *1 (6th Cir. Apr. 25, 1996) (noting that "an imprisoned litigant who is not represented by counsel

may not represent a class of inmates because the prisoner cannot adequately represent the interests

of the class") (citing *Oxendine*, 509 F.2d at 1407).  Because Plaintiff is an incarcerated *pro se*

litigant, and because his claims lack merit, the Court finds that he is not an appropriate

representative of a class.  Therefore, the Court will deny Plaintiff's request for class certification.

### B.    Motion to Unseal

Plaintiff has filed a "motion to unseal restricted records (specifically docket #5

attachments) sent with transfer order transferring case to the Western District in the case at bar."

(ECF No. 8, PageID.24.)  Plaintiff argues that the attachment to the fifth docket entry is sealed and

believes that "someone, or some party is involved in the case and is influencing the outcome and

decision-making process of this [C]ourt to enter judgment against the Plaintiff."  (*Id.*)  Plaintiff

believes that an Assistant United States Attorney, Wayne County Prosecutor, and Wayne County

Sheriff's Deputy have told the Court "to enter judgment in favor against the Plaintiff because they

have said that the Plaintiff is someone that should never be released from prison and never have

judgment of any kind entered in favor of the Plaintiff."  (*Id.*)  Plaintiff has filed three supplements

reiterating his arguments for unsealing.  (ECF Nos. 18, 19, 21.)

Plaintiff is advised that the attachment that has been sealed is a copy of the Eastern

District of Michigan's docket sheet for this matter.  (ECF No. 5-1.)  This docket sheet contains all

the information available on the public docket sheet.  (*Id.*)  If Plaintiff wishes to obtain a copy of

this docket sheet, he can contact the Eastern District of Michigan's Clerk's office to do so.  The Court will deny his motion to unseal this attachment.  (ECF No. 8.)

### C.     Motions Regarding Case Assignment (ECF Nos. 12, 13, 14)

Plaintiff has also filed three motions regarding the assignment of this matter to the undersigned and referral of the matter to Magistrate Judge Berens.  Plaintiff first requests that this matter be assigned to a district judge and for Magistrate Judge Berens to be completely removed from participating in the matter "based on prejudice, lack of impartiality[,] and judicial neglect." (ECF No. 12.)  He argues that Magistrate Judge Berens has "ruled against [him] at every single level," ensuring that he "does not get the relief to which he has clearly proven entitlement."  (*Id.*, PageID.34.)  In support, Plaintiff references "every decision" entered by Magistrate Judge Berens in *Smith v. Probable Cause Conference Coordinator*, No. 1:21-cv-794 (W.D. Mich.).  Plaintiff also seeks a stay of this matter pending a full inquiry into his request to have Magistrate Judge Berens removed from this case.  (ECF No. 13.)  In his third motion (ECF No. 14), Plaintiff objects to the November 3, 2021, notice (ECF No. 10) advising him that this matter had been assigned to the undersigned and referred to Magistrate Judge Berens.  Plaintiff reiterates his belief that the undersigned and Magistrate Judge Berens are prejudiced against him because of their previous rulings in his other cases.  (ECF No. 14, PageID.42.)

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The provision requires a judge to *sua sponte* recuse himself if he knows of facts that would undermine the appearance of impartiality.  *Youn v. Track, Inc.*, 324 F.3d 409, 422–23 (6th Cir. 2003); *Liteky v. United States*, 510 U.S. 540, 547–48 (1994).  In addition, 28 U.S.C. § 144 requires that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or

prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."   An affidavit filed under § 144 must "allege[ ] facts which a reasonable person would believe would indicate a judge has a personal bias against the moving party."   *Gen. Aviation, Inc. v. Cessna Aircraft, Co.*, 915 F.2d 1038, 1043 (6th Cir. 1990).  The alleged bias must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."   *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).  Extrajudicial conduct encompasses only "personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law."   *Youn*, 324 F.3d at 423 (internal quotation marks omitted).  "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases.  *Id.* (citing *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251–52 (6th Cir. 1989)); *Demjanjuk v. Petrovsky*, 776 F.2d 571, 577 (6th Cir. 1985)).

As an initial matter, Plaintiff has not filed an affidavit pursuant to § 144.  Moreover, all of Plaintiff's complaints about the undersigned and Magistrate Judge Berens emanate from participation in prior cases filed by Plaintiff in this court.  *See Youn*, 324 F.3d at 423; *Demjanjuk*, 776 F.2d at 577.  Specifically, Plaintiff takes issue with Magistrate Judge Berens' dismissal of a habeas corpus action filed pursuant to 28 U.S.C. § 2254.  *See Smith v. Probable Cause Conference Dir.*, No. 1:21-cv-794, 2021 WL 4550951 (W.D. Mich. Oct. 5, 2021).  In that action, Magistrate Judge Berens dismissed Plaintiff's § 2254 petition for failing to raise a meritorious federal claim.  *Id.* at *1.  Magistrate Judge Berens also noted that Plaintiff could not proceed as a "next friend" for any other prisoner and was not entitled to class certification under Rule 23 of the Federal Rules of Civil Procedure.  *See id.* at *6–8.

Plaintiff also takes issue with various orders entered by the undersigned in *Smith v. Burk*, No. 1:19-cv-1018 (W.D. Mich.).  Specifically, the undersigned has denied numerous motions filed by Plaintiff, including motions for default judgment, motions appealing magistrate judge decisions, motions to transfer, motions to disqualify, and motions for reconsideration.  The undersigned also denied Petitioner leave to proceed *in forma pauperis* for purposes of an interlocutory appeal.

Plaintiff simply disagrees with rulings made against him by the undersigned and Magistrate Judge Berens.  However, "judicial rulings alone almost never constitute a valid basis" for recusal or disqualification.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994).  They are not a valid basis here, and the Sixth Circuit has previously advised Plaintiff of such.  *See Smith v. Pallas*, No. 18-1933, 2019 WL 7946345, at *3 (6th Cir. Nov. 7, 2019).  Plaintiff has failed to show any extrajudicial conduct from which the Court could conclude that a personal bias against Plaintiff exists.  Plaintiff's motions to have the undersigned and Magistrate Judge Berens removed from this case (ECF Nos. 12, 14) will, therefore, be denied.  Moreover, Plaintiff's motion for a stay pending resolution of the assignment matter (ECF No. 13) will be denied.

### D.    Request to Honor Referral to Early Mediation

Plaintiff has also filed a request for this Court to honor the Eastern District of Michigan's prior referral of the matter to its early mediation program.  (ECF No. 15.)  According to Plaintiff, Judge Davis referred the matter to the early mediation program, and Plaintiff "would like to know if the [C]ourt will actually keep that original referral for the claims raised in the complaint, or not and if not, please tell me why."  (*Id.*, PageID.46.)

Plaintiff's request, however, is based upon a misreading of the Eastern District of Michigan's notice of mediation program.  The notice specifically stated that the case, "if not dismissed or transferred, and if eligible, will be stayed and referred for participation in the Pro Se

Early Prisoner Mediation Program." (ECF No. 2.) Plaintiff's case, therefore, was not actually referred to the Eastern District's mediation program because it was transferred to this Court. Moreover, the Court will not refer this case to its early mediation program because the Court has concluded that Plaintiff's entire complaint fails to state a claim for relief. Plaintiff's request to honor the referral to mediation will, therefore, be denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Moreover, Plaintiff's request for class certification (ECF No. 1), request to honor the Eastern District of Michigan's referral to early mediation (ECF No. 15), and various motions (ECF Nos. 8, 12, 13, 14) will be denied.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum. This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: ___January 25, 2022___               /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             UNITED STATES DISTRICT JUDGE

17